ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MAYA KARWANDE (CABN 295554)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Maya.karwande@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK PIKE, <br><br> Defendant. | CASE NO. 4:23-CR-00387-JST <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> Date: January 9, 2024 <br> Time: 10:30 a.m. <br> Court: Hon. Kandis A. Westmore |

## I. INTRODUCTION

Mark Pike is a violent offender who has demonstrated by his commission of multiple new, serious crimes (included the charged federal offense) while on parole and his failure to participate in drug treatment – even though it was a *condition* of his parole – that he is not amendable to pretrial supervision. Pike cannot overcome the presumption that there is no condition or combination of conditions that can provide for the safety of the community or secure his appearance before the Court. Pike's acceptance into the Newbridge residential drug treatment program does not address these concerns. Accordingly, the government agrees with Pretrial Services' recommendation (which has remained consistent over the course of three detention hearings as additional information regarding the defendant, his history, and proposed sureties have been obtained) and requests that Pike be detained pending trial.

## II. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's

release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

When the case involves an offense for which a maximum term of imprisonment for ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### III.   ARGUMENT

#### A.   Pike Faces a Rebuttable Presumption in Favor of Detention.

Pike is charged with a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), which carries a maximum term of imprisonment of more than ten years under the Controlled Substances Act. Thus, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, Pike will be unable to overcome this presumption.

#### B.   Pike Cannot Overcome the Presumption that He Is a Danger to the Community.

##### 1.   At the time of the charged offense, Pike was on parole for a 2017 assault with a deadly weapon conviction.

Mark Pike was paroled on April 1, 2022, after serving a portion of his 10-year sentence for assault with a deadly weapon in violation of Penal Code 273.5. Pike's conviction resulted from a very serious domestic violence incident. According to the police report, in July of 2016, during an argument with an ex-girlfriend and the mother of his then 5-month-old baby, Pike hit the victim on the back of the

head with a tire pipe and strangled her with a bike lock cable.  Pike then left the victim bleeding from a 2-inch laceration in her head in her garage.  The victim attempted to follow Pike in her car but was so disoriented she crashed the car in a field. Fearing she would bleed to death, she stumbled to a residence near the crash, knocked on the door, and asked for help.  When police arrived, the victim was in and out of consciousness. The car was covered with blood from the head wound. After the incident, in recorded jail calls, Pike attempted to dissuade the victim from testifying. Pike told the victim that they would be together and asked her to say that he wasn't the one who had hurt her and that she had been coerced into identifying him.  Below are some examples of their conversations:

> 7/30/16 at 2:07 PM
> Victim: The attacker wasn't thinking right. [Laughs]
> Pike: Yeah, whoever attacked you wasn't right. So then, I mean, you know, 'bam'.
> Victim: No, he wasn't.
> Pike: You know what I mean? Then they coerced you. They coerced you. The police just coerced you into it.
> Victim: Are they coercing me now or then?
> Pike: Yeah, they coerced you, you feel me? I mean you know, you know, like [redacted]. [redacted] probably couldn't have been coerced but he really doin' it. You feel me? You really gettin' down. You know what I mean? Itchy fingered, you feel me? There's a lot of itchy fingers, you get what I'm saying?
> Victim: I wanna leave now.
> Pike: The itchy fingers don't mean nothing, you'd beat itchy fingers too, but motherfucker you know what I mean? When a motherfucker ain't did nothing motherfucker sitting in here for nothing then that's fucked up.
> Victim: Huh?
> Pike: I said, when a motherfucker sitting in here ain't did nothing you know what I mean? Then that's kinda fucked up.
> Victim: Didn't do nothing? I mean...
> Pike: A motherfucker ain't done nothin'.
> Victim: You know what you did.
> Pike: I'm sitting here, I ain't done nothing and you know what I mean? Boom.
>
> 7/30/16 at 2:42 PM
> Pike: "Now, if you say something to my lawyer, tonight I'll probably go home. If you just let him know it that was a bunch of bullshit. You ain't, we ain't gotta go to trial. You won't get in trouble. He might want you to come into his office maybe to sign a piece of paper. He take it to the district attorney 'cause he already got control of the district attorney, just tell him, 'Look it was just this.' Because, I mean, they don't want us talking or whatever, they wanna play this game and they want me to sit here and blame like I really did something to you, I mean, when we gonna be together regardless. Remember when we got pulled over and I went to jail that day?
> Victim: You don't love me though. You do not love me.
> Pike: Who don't? Who don't love you?
> Victim: You have not told me you love me in a long time. You told me, 'Eat shit.'

At the same time, in a message extracted from his phone during the time period following the assault, Pike bragged about the incident: "i whopped her ass & sent her 2 da hospital." *See People v. Pike*, 2018 WL5003446 (Contra Costa County, Super Ct. No 5-161223-3) at *2 (October 16, 2018). Pike was convicted following a jury trial and sentenced to 10 years' imprisonment.

Pike's 2016 conviction appears to be the most serious violence in his criminal record, but it is not an isolated incident. According to the Pretrial Services Report, Pike has numerous convictions and arrests for domestic violence and firearm related offenses, many that occurred while Pike was on parole for previous convictions and that were treated as parole violations:

- March 3, 2009 – Battery: Spouse/ Ex-Spouse while on parole, prosecution deferred for revocation of parole.
- June 12, 2009 – Force/ Assault with a Deadly Weapon Not Firearm: Great Bodily Injury Likely while on parole, case dismissed because of victim unavailability, parole revoked.
- August 22, 2009 – Battery: Spouse/ Ex-Spouse, prosecution not pursued, parole revoked.
- August 17, 2011– Force/ Assault with a Deadly Weapon/ Inflict Corporate injury on Spouse, prosecution deferred for revocation of parole.
- February 6, 2014 – Arrest for Inflict Corporal Injury on Spouse/ Cohabitant, prosecution dismissed for lack of sufficient evidence.
- July 26, 2014 – Arrest for Prohibited Own/ Etc. Ammunition/ Etc, prosecution dismissed for lack of sufficient evidence.
- February 9, 2016 – Felon in possession of a firearm, ammunition while on probation, prosecution dismissed for lack of sufficient evidence.

Notably, the above listed seven incidents are limited to domestic violence and firearm related offenses, the majority of which took place while Pike was under court supervision. If all of Pike's criminal history is considered there are 68 entries, 11 convictions, and 5 parole or probation violations listed on the Pretrial Services criminal history report leading up the 2016 assault with a deadly weapon.

**2. Since Pike was paroled in April 2022, he has returned to drug dealing, possessed firearms and ammunition, and failed to engage in any drug treatment.**

Pike was paroled in April 2022 under special conditions that included drug testing, agreeing not

to use any controlled substance, and the requirement that "You shall enroll in and successfully complete a substance abuse treatment program as directed by your parole agent or appropriate parole authority." MP-00285. Despite his Parole Officer giving Pike numerous opportunities for drug treatment and a parole condition requiring Pike to complete drug treatment, Pike has not done so. ECF 10 (Pretrial Services Second Addendum Report at p. 2 ("There was no evidence the defendant attended substance abuse treatment, but he was referred multiple times.")) Instead, after a short stint of claimed employment, Pike has been unemployed September 2022 and returned to dealing significant quantities of narcotics, including methamphetamine and fentanyl, and possessing firearms and ammunition:

- October 12, 2022 (charged federal offense) – parole search reveals 3.5 pounds of methamphetamine and heroin (approximately 10 grams) in Pike's room on Enes Ave., where the proposed surety lives.
- December 29, 2022 – just two months later, a parole search reveals 1 pound of methamphetamine, scales, baggies, 9.2 grams cocaine, 60 grams (gross weight) fentanyl and a Glock 17 semi-automatic handgun with an extended, loaded, 30 round magazine, which was fully functional and lying on the bed in Pike's room on Enes Ave., where the proposed surety lives (it is unclear if the surety was living there at that time). A photo of the firearm and the magazine is below:



- May 17, 2023 – parole search of Pike's vehicle (a purple Cadillac Escalade with the license plate MRPIKE) reveals 7.5 grams of fentanyl – individually wrapped for distribution – and in Pike's

unreported residence, three 9mm bullets as well as plastic baggies and digital scales.

- November 16, 2023 – Pike is arrested pursuant to a warrant for the federal charge. At the time of his arrest, he had approximately a quarter pound of methamphetamine and 27.8 grams of fentanyl.

In addition to these incidents, a sampling of messages from Pike's phone that was seized in October 2022 reveal that he was actively engaged in dealing substantial quantities of narcotics and acquiring firearms:

- 09/17/2022: In this thread, Pike offers to sell Cesar Knock 7 grams for 80

    Cesar Knock 13: How much can I get for 80?
    Cesar Knock 13: I am on my way
    Cesar Knock 13: Should be there in 20
    Pike: I'ma give u 7gms for 100.

- 09/22/2022: In this thread Pike offers to sell White James a quarter pound for $400.00

    White James: I need them I really haven't been doin to much the last few
    Pike: Yep I give you a QP for 400
    White James: Ok ok ok ok ok ok ok
    White James: Lemme bust a move right quick

- 10/11/2022: In this thread, Concord Mario offers Pike a firearm for $200
    Concord Mario: I got a 12 guage for sale
    Pike: How much
    Concord Mario: 200
    Concord Mario: You want a pic?
    Concord Mario: A matter of fact I got 2 12 gauges and 2 rifles.
    Pike: Send pic of all

- 9/21/2022: In this thread J.M asks Pike the price of a QP

    J.M.: what's ur price in QP
    Pike: 400

Despite being on strict conditions of parole, Pike has flagrantly violated his terms, engaging in narcotics trafficking and possessing firearms and ammunition on numerous instances. Pike's recent acceptance into Newbridge drug treatment program[1] does not mitigate the danger he possesses to the

---

[1] It is notable that (1) Pretrial Services did not recommend Pike be referred to Newbridge; (2) Newbridge took weeks to decide whether Pike, given his history of violence, was a suitable candidate for the program; (3) Newbridge based it decision on Pike's criminal record (which is devoid of details) and Pike's own statements regarding the offense, which are not reliable.

UNITED STATES' DETENTION MEMO         7
4:23-CR-00387-JST

community or his history of non-compliance with conditions of release. There is no clear correlation between Pike's history of violence and his substance abuse[2] such that sobriety (if obtained) is a reasonable assurance that Pike will not engage in violence behavior. And Pike's record of compliance with conditions of release while on parole is so poor that being in a residential treatment program is not at all a reasonable assurance for the safety of the community. Pike has been offered drug treatment in the past and until his federal arrest, was not interested. The availability of a surety –a relative with whom Pike has been living with while keeping drugs and a gun at the residence while on parole– does not change the calculation.

### C. Pike cannot overcome the presumption that he is a flight risk.

Pike is also a risk of flight. Once Pike realized his listed parole address would be searched frequently, he claimed to transient and started living at different unreported locations. Pike also has history of bench warrants from 3/9/2016 and 4/15/2016. At this time, Pike is facing a serious federal charge and has every incentive to flee.

### IV. CONCLUSION

Pike cannot overcome the presumption that there are no conditions that will reasonably ensure the safety of the community or assure his appearance at court proceedings, and, as recommend by Pretrial Services, he should be detained pending trial.

DATED: January 9, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Maya Karwande*
MAYA KARWANDE
Assistant United States Attorney

---

[2] The argument between the victim and Pike began because the victim believed Pike was hiding something in his pocket and she tried to see what it was. The victim guessed it might have been either a hypodermic syringe used for drugs or something Pike had stolen from her, but there is nothing in the police reports indicating that there was a determination of what it was (Pike assaulted the victim before she could see) or that Pike was under the influence during the assault.

UNITED STATES' DETENTION MEMO        8
4:23-CR-00387-JST